IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| XIUFEN DU-PHILLIPS,<br><br>Plaintiff,<br><br>vs.<br><br>CITIBANK, N.A.,<br><br>Defendant. | CIVIL NO. 25-00034 JAO-RT<br><br><br>ORDER GRANTING DEFENDANT CITIBANK N.A.'S MOTION TO COMPEL ARBITRATION AND STAY ACTION (ECF NO. 14) |

**ORDER GRANTING DEFENDANT CITIBANK N.A.'S MOTION TO COMPEL ARBITRATION AND STAY ACTION (ECF NO. 14)**

In this case, Plaintiff Xiufen Du-Phillips ("Plaintiff" or "Du-Phillips") sues Defendant Citibank, N.A. ("Defendant" or "Citibank") for incorrectly imposing charges on her credit card account and demanding the repayment of a credit card debt. ECF No. 1. Plaintiff alleges that these actions violate the Truth in Lending Act and Fair Credit Billing Act and constitute unfair and deceptive acts and practices under Hawai'i Revised Statutes ("HRS") § 480. *Id.* Defendant moves to compel arbitration and stay the case pending those proceedings ("Motion" or "Motion to Compel Arbitration"). ECF No. 14. For the following reasons, the Court GRANTS Defendant's Motion to Compel Arbitration.

# I.    BACKGROUND

## A.    Factual History

### 1.    Underlying Dispute

Plaintiff disputes her Citibank credit card charges in connection with an allegedly paid, but unprocessed debt on her account.  *See* ECF No. 1 ¶¶ 6–36. Plaintiff, a resident of Hawai'i, opened an American Airlines AAdvantage Platinum Select credit card ("AA Account" or "AA credit card") online with Citibank in the summer of 2024 and made two purchases totaling $4,724.37.  *See id.* ¶¶ 6–8; ECF No. 1-1; ECF No. 17-1 ¶ 2.  She timely contacted a Citibank employee and arranged for automatic payment of the full amount from her Territorial Savings Bank checking account, which had sufficient funds.  *See* ECF No. 1 ¶¶ 9–10.  However, that payment was not processed and over the course of several months, Citibank allegedly charged improper fees and interest to her account despite Plaintiff's repeated attempts to pay off the debt and dispute the charges.  *See id.* ¶¶ 11–36.  Plaintiff then initiated this lawsuit against Citibank.

### 2.    Arbitration Agreement

In response to Plaintiff's lawsuit, Citibank filed this Motion to Compel Arbitration.  ECF No. 14.  Citibank alleges that when Plaintiff opened the AA Account, Citibank mailed a copy of its Card Agreement to Plaintiff along with the

physical card on June 16, 2024. *See id.* at 3. The Card Agreement contained the

Arbitration Agreement, which reads:

> **ARBITRATION**
>
> **PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.**
>
> This section provides that disputes may be resolved by binding arbitration. Arbitration replaces the right to go to court, have a jury trial or initiate or participate in a class action. In arbitration, disputes are resolved by an arbitrator, not a judge or jury. Arbitration procedures are simpler and more limited than in court. This arbitration provision is governed by the Federal Arbitration Act (FAA), and shall be interpreted in the broadest way the law will allow.
>
> **Covered Claims**
> - **You or we may arbitrate** any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account, a previous related account or our relationship (called "Claims").
> - **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**
>
> Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, thirty-party claims, interpleaders or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims.

*See id.* at 4 (emphasis in original). Citibank contends that Plaintiff had the right to

reject the Arbitration Agreement within 45 days but did not do so. *See id.*; ECF

No. 18 at 21.  Instead, Plaintiff verified the card was received on June 27, 2024 and began to use the account.  *See* ECF No. 14 at 3–4.

Meanwhile, Plaintiff asserts that she never received the Card Agreement or any notice of the Arbitration Agreement, and says that when she received her AA credit card in the mail, it was attached only to a single page.  *See* ECF No. 17 at 2; ECF No. 17-1 ¶¶ 4–5.  She claims she first saw the Card Agreement when Citibank emailed it to her attorney in March 2025.  *See* ECF No. 17-1 ¶ 5.  After that, Plaintiff sent a letter to Citibank rejecting the arbitration provision within two weeks.  *See* ECF No. 17-1 ¶ 5.

Citibank further contends that several years earlier, Plaintiff opened a Costco Account with Citibank and Citibank sent her the Card Agreement—containing an identical Arbitration Agreement—on September 17, 2020, along with the physical credit card.  *See* ECF No. 14 at 4.  And again, Plaintiff did not notify Citibank that she rejected the Arbitration Agreement, but instead used the card to make purchases.  *See id.*  Plaintiff asserts that she also never received notice of the Costco Card Agreement and the mailing included only the physical credit card attached to a single sheet.  *See* ECF No. 17 at 3–4; ECF No. 17-1 ¶ 11.  Furthermore, Plaintiff argues that the Costco account and its arbitration agreement are irrelevant to the current dispute.  *See* ECF No. 17 at 7–8.

**B.    Procedural History**

Plaintiff commenced this action against Citibank on January 24, 2025.  ECF

No. 1 ("Complaint").  Citibank moved to compel arbitration and stay this action on

March 21, 2025, ECF No. 14.  Plaintiff opposed,  ECF No. 17, and Citibank

replied on April 23, 2025, ECF No. 18.  A few days later, Plaintiff filed a notice of

supplemental authorities.  ECF No. 19.

The Court elects to decide the Motion without a hearing pursuant to Local

Rule 7.1(c).

## II.    LEGAL STANDARD

"[T]he Federal Arbitration Act (FAA) governs the enforceability of

arbitration agreements in contracts involving interstate commerce."  *Kramer v.*

*Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013).  An arbitration

agreement within the scope of the FAA "shall be valid, irrevocable, and

enforceable," except "upon such grounds as exist at law or in equity for the

revocation of any contract."  9 U.S.C. § 2.  Any party "aggrieved by the alleged . . .

refusal of another to arbitrate" may petition a district court for an order compelling

arbitration in the matter provided for in the agreement.  *Id.* § 4.

"Generally, a court must determine two issues before deciding whether to

compel arbitration:  (1) whether there is an agreement to arbitrate between the

parties; and (2) whether the agreement covers the dispute."  *Zoller v. GCA*

*Advisors, LLC*, 993 F.3d 1198, 1201 (9th Cir. 2021).  First, as to whether there is

an agreement to arbitrate, if "the making of the arbitration agreement" is "in issue,"

9 U.S.C. § 4, the Ninth Circuit has explained that courts should "rely on the

summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure."

*Hansen v. LMB Mortgage Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021).  "The

summary judgment standard is appropriate because the district court's order

compelling arbitration is in effect a summary disposition of the issue whether or

not there had been a meeting of the minds on the agreement to arbitrate."  *Id.*

(citation and internal quotation marks omitted).

Applying Federal Rules of Civil Procedure ("FRCP") Rule 56 then, a court

evaluating whether an arbitration agreement exists must view the facts and draw

inferences in the light most favorable to the nonmoving party.  *See State Farm Fire*

*& Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir. 1989) (per curiam).  "The party

seeking to compel arbitration . . . bears the initial burden of" showing "the absence

of a genuine issue of material fact."  *See Driskill v. Experian Info. Sols., Inc.*, 753

F.Supp.3d 839, 845–46 (N.D. Cal. 2024) (citing *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986)).  "However, the nonmoving party cannot merely demonstrate

'that there is some metaphysical doubt as to the material facts.'"  *Tu v. Experian*

*Info. Sols., Inc.*, 2025 WL 1134612, at *3 (S.D. Cal. Apr. 16, 2025) (quoting

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

In other words, "[t]he mere existence of a scintilla of evidence in support of" the nonmoving party's position "will be insufficient." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Second, as to whether the agreement covers the dispute, "'[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Munro v. Univ. of S. Cal.*, 896 F.3d 1088, 1091 (9th Cir. 2018) (cleaned up) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). If the court determines that both factors are met, "then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

## III.  DISCUSSION

Before turning to the merits of the arbitration agreement arguments, the Court first evaluates Plaintiff's challenges to the admissibility of Citibank's evidence to determine whether the Court may consider it. The Court then addresses the key issues at the crux of the dispute:  (1) what state law applies to the dispute; (2) whether the arbitration agreement is valid given Plaintiff's contention that she never received the agreement; and (3) whether the arbitration agreement is enforceable against Plaintiff in the instant action. For the following reasons, the Court considers Citibank's evidence and concludes that Plaintiff and Citibank are

7

bound by a valid, enforceable arbitration agreement under South Dakota law and so the Court GRANTS Citibank's Motion.

## A.    The Evidence

FRCP Rule 56 "'mandate[s] only that the substance of the proffered evidence would be admissible at trial.'"  *David v. Betts*, 734 F.Supp.3d 1050, 1078 n.20 (D. Haw. 2024) (citing *Dinkins v. Schinzel*, 362 F.Supp.3d 916, 923 (D. Nev. 2019)); *see also Romero v. Nev. Dep't of Corr.*, 673 F.App'x 641, 644 (9th Cir. 2016); Fed. R. Civ. P. 56 advisory comm. note to 2010 amendment.  At this stage, the Court does not "focus on the admissibility of the evidence's form" and instead focuses "on the admissibility of its contents."  *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021).

Before the evidence may be considered, its proponent must authenticate it by laying the required foundation.  *See Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987).  Federal Rule of Evidence ("FRE") 901(b)(1) provides that evidence may be authenticated by the testimony of a witness with knowledge that "an item is what it is claimed to be."  Fed. R. Evid. 901(b)(1).  FRCP Rule 56(c)(4) requires "[a]n affidavit or declaration used to support or oppose a motion . . . [to] be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  Of course, the foundation for business

8

records only requires that a qualified witness attest to the fact that the record was timely made and kept in the course of a regular practice of the business. *See* Fed. R. Evid. § 803(6).

In support of its Motion, Citibank offers five exhibits that are authenticated by Kelly Booth, a Citibank employee who reviewed Citibank's records and provides statements based on personal knowledge. *See* ECF No. 14 at 12–63. After Plaintiff alleged that she never received the Card Agreement in her opposition, *see* ECF No. 17 at 2–4, Citibank submitted a supplemental declaration by Kelly Booth that authenticated 13 exhibits.[1]

Booth—a Citibank employee whose responsibilities include "preparing declarations in connection with litigation involving Citibank" and who has "access to the business records" at issue—declares that the exhibits "are all true and correct business records created . . . in the course of regularly conducted business activity"

---

[1] Plaintiff filed a notice of supplemental authorities, citing cases that stand for the proposition that moving parties cannot raise new arguments or facts in reply. *See* ECF No. 19. The Court is unpersuaded. First, Plaintiff could have filed a motion for leave to file a sur-reply if she felt inclined to rebut Citibank's evidence, but she did not. Second, "[w]hile a party, generally, may not introduce new evidence via a Reply, a party may introduce evidence that directly responds to evidence provided in Opposition papers." *Young v. Allstate Co.*, 662 F.Supp.3d 1066, 1073 (C.D. Cal. 2023); *see also Edwards v. Toys "R" Us*, 527 F.Supp.2d 1197, 1206 n.31 (C.D. Cal. 2007) ("Evidence is not new . . . if it is submitted in direct response to proof adduced in opposition to a motion." (citation and internal quotation marks omitted)). Citibank's evidence in reply directly responded to Plaintiff's contention that she never received the Card Agreement.

and the statements in the declaration "are based on [her] personal knowledge or review of Citibank's records." *See* ECF No. 14 at 12–13 ¶¶ 2–3; ECF No. 18-1 ¶¶ 2–3.  Booth also provides an explanation of "Citibank's regular practice to include a copy of the applicable Card Agreement with the actual credit card that is mailed to a customer after an account was opened" and offers a copy of the Card Agreement as an exhibit.  *See* ECF No. 14 at 14 ¶ 7, 18–34.  With regards to Plaintiff's specific account records, Booth personally "reviewed the available Citibank system notes for the Account" and provided records reflecting the mailing and Plaintiff's verification of her receipt of the credit card that was delivered in the same mailing.  *See* ECF No. 18-1 ¶¶ 5, 9–13; ECF No. 14 at 14 ¶ 8, 35–37.

Because Booth establishes the foundation for the exhibits based on personal knowledge, the Court determines that the Booth declarations properly authenticate the exhibits.  *See Izett v. Crown Asset Mgmt., LLC*, 2019 WL 4845575, at *5 (N.D. Cal. Oct. 1, 2019) (considering exhibits attached to a similar declaration and noting that a "qualified witness need only be familiar with the company's recordkeeping practices"); *Doe v. Citibank, N.A.* 2024 WL 5275508, at *3 (C.D. Cal. July 10, 2024) (reviewing Booth's declaration and attached exhibits in a similar dispute and considering the evidence in its decision to compel arbitration).  Citibank thus properly authenticated the evidence under FRE 901(b)(1) and the evidence satisfies the requirements of FRCP Rule 56(c)(4).  The Court will therefore consider

10

Citibank's declarations and exhibits in its FRCP Rule 56 analysis of the validity of the arbitration agreement.

## B.    Applicable Law

Before turning to the merits of the parties' arguments over the validity of the arbitration agreement, the Court must first determine what law governs the dispute.

### 1.    State Law Governs Contract Formation

Courts "apply ordinary state law principles that govern contract formation" when evaluating "whether a valid contract to arbitrate exists[.]" *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014). Here, the parties disagree over which state's law should apply.

Citibank contends that the Card Agreement "is expressly governed by Federal law and the law of South Dakota" and so "South Dakota law governs the determination of whether a valid agreement to arbitrate exists." *See* ECF No. 14 at 8 (citation and internal quotation marks omitted). Meanwhile, Plaintiff relies on Hawai'i state law to argue that she did not assent to the Arbitration Agreement and so the choice-of-law provision does not apply. *See* ECF No. 17 at 5–6. Citibank responds that the choice-of-law provision is enforceable and, in any event, under Hawaii's choice-of-law test, South Dakota has a compelling interest such that South Dakota state law should apply. *See* ECF No. 18 at 16–18.

Indeed, there is a "chicken and egg" question as to which state law applies. Any application of the Arbitration Agreement's choice-of-law clause "stems from the as-yet-undetermined proposition that" the parties entered into a valid Arbitration Agreement to begin with. *See Nguyen v. Barnes & Noble, Inc.*, 2012 WL 3771081, at *3 (C.D. Cal. Aug. 28, 2012). The Court therefore walks through the choice-of-law analysis to determine which law should govern the question of which law to apply.

### 2.    Choice-of-Law Analysis

Federal common law applies to the choice-of-law determination when jurisdiction is based on federal question instead of diversity. *See Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006). Here, Plaintiff's Complaint asserts federal claims under the Truth in Lending Act, 15 U.S.C. § 1601, and the Fair Credit Billing Act, 15 U.S.C. § 1666, and therefore invokes the Court's federal question jurisdiction. *See* ECF No. 1 ¶¶ 1–2; 28 U.S.C. § 1331.

However, Plaintiff's Complaint also invokes the Court's supplemental jurisdiction by asserting a state law claim of unfair and deceptive acts and practices under HRS § 480. *See* ECF No. 1 ¶¶ 2, 45–50. The Ninth Circuit has explained that "[i]n a federal question action where the federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96

12

F.3d 1151, 1164 (9th Cir. 1996). Thus, the Court applies the choice-of-law test of

Hawaiʻi to determine what state law applies to the question of whether there was a

valid arbitration agreement.

"Under Hawaii law, courts 'look to the state with the most significant

relationship to the parties and subject matter' in a choice-of-law analysis."

*Standard Register Co. v. Keala*, 2015 WL 3604265, at *6 (D. Haw. June 8, 2015)

(quoting *Mikelson v. United Servs. Auto. Ass'n*, 107 Hawaiʻi 192, 198, 111 P.3d

601, 607 (2005)). The Hawaiʻi Supreme Court has explained its flexible approach

in choice-of-law analysis as such:

> This court has moved away from the traditional and rigid
> conflict-of-laws rules in favor of the modern trend towards a
> more flexible approach looking to the state with the most
> significant relationship to the parties and subject matter. This
> flexible approach places primary emphasis on deciding which
> state would have the strongest interest in seeing its laws applied
> to the particular case. Hence, this court has said that the interests
> of the states and applicable public policy reasons should
> determine whether Hawaiʻi law or another state's law should
> apply. The preferred analysis, then in our opinion, would be an
> assessment of the interests and policy factors involved with a
> purpose of arriving at a desirable result in each situation.

*Mikelson*, 107 Hawaiʻi at 198, 111 P.3d at 607 (citations, brackets, and quotation

marks omitted).

### 3.    South Dakota State Law Applies

Applying that test, the Court concludes that South Dakota law governs the

arbitration agreement dispute at issue. Citibank is a national bank located in Sioux

Falls, South Dakota, *see* ECF No. 14 at 6 n.1, while Plaintiff is a resident of Hawaiʻi who applied for the Citibank AA credit card account online, *see* ECF No. 1 ¶ 3; ECF No. 17-1 ¶ 2.  As Citibank points out, *see* ECF No. 18 at 17–18, other courts in this circuit have determined that South Dakota law should govern in similar choice-of-law disputes involving Citibank in part because South Dakota has a substantial relationship with Citibank.  *See, e.g.*, *Cayanan v. Citi Holdings, Inc.*, 928 F.Supp.2d 1182, 1198 (S.D. Cal. 2013) (applying South Dakota law in a dispute involving a California resident and reasoning that South Dakota has "a substantial relationship with Citibank because . . . Citibank's primary place of business is in South Dakota"); *Daugherty v. Experian Info. Sols., Inc.*, 847 F.Supp.2d 1189, 1195 (N.D. Cal. 2012) (explaining that "South Dakota has a substantial relationship with [Citibank], justifying the choice of South Dakota law" (citation and internal quotation marks omitted)); *Coppock v. Citigroup, Inc.*, 2013 WL 1192632, at *2 (W.D. Wash. Mar. 22, 2013) (same); *Guerrero v. Equifax Credit Info. Servs., Inc.*, 2012 WL 7683512, at *3 (C.D. Cal. Feb. 24, 2012) (same).  And while those courts use the more rigid and traditional Restatement approach, some of the same considerations are relevant here.

The Court is unaware of caselaw concluding that Hawaiʻi has a compelling interest in applying its state law to credit card disputes between Hawaiʻi residents

and out-of-state banks.[2]  Here, Defendant offers several reasons for why it believes that South Dakota has a stronger interest in this dispute—for instance, because Citibank is a national bank located in South Dakota that "provides credit to cardholders nationwide" and South Dakota has specific state law requiring that its law apply in "a revolving loan account arrangement" such as this one.  *See* ECF No. 18 at 18.

As one court explained in executing Citibank's choice-of-law provision in favor of South Dakota law:

> South Dakota, where Citibank is located, has a compelling interest in applying its laws to regulate businesses operating within its borders, while the bank has an equally compelling need to ensure that its transactions are governed by a common set of laws.  "Probably the most important function of choice-of-law rules is to make the interstate and international systems work well."  Restatement § 6, cmt. d.  Even more so than other interstate businesses, the national banking system fundamentally depends on allowing national banks to operate under a uniform set of laws.  This policy is reflected in the extensive federal oversight of national banks, as well as federal laws allowing national banks to "export" their home-state interest rates so that a single state's usury laws will apply to the bank's customers nationwide.

---

[2]  The Court notes that this District applied Hawaiʻi law to determine the validity of a credit card arbitration agreement in *Snyder v. CACH, LLC*, 2016 WL 6662675, at \*7 (D. Haw. Nov. 10, 2016).  However, that was because the out-of-state defendants did not request the court to apply the substantive law of their respective states.  *See id.*  Here, Defendant does argue that South Dakota law should apply. *See* ECF No. 18 at 17–19.

*Hershler v. Citibank (South Dakota), N.A.*, 2008 WL 9347529, at *3 (C.D. Cal. Dec. 19, 2008) (citations omitted).  Other courts in this circuit weighing different states' interests in similar disputes have done the same and applied the laws of the bank's home state because of the bank's national scope.  *See, e.g.*, *Abat v. Chase Bank USA, N.A.*, 738 F.Supp.2d 1093, 1096 (S.D. Cal. 2010) (applying Delaware law in a dispute between Chase Bank and its out-of-state customer in part "because Delaware has a significant interest in regulating its banks who do business nationwide"); *Mackey v. MBNA Am. Bank, N.A.*, 343 F.Supp.2d 966, 969 (W.D. Wash. 2004) (applying Delaware law in a dispute between MBNA bank and its out-of-state customer "[g]iven the nationwide scope of MBNA's transactions" and Delaware's "obvious interest in uniform interpretation of its credit card agreements").

Meanwhile, Plaintiff has not offered any reason why Hawai'i law, and not South Dakota law, should apply.  Instead, she relies only on her arguments that she did not assent to the arbitration agreement.  *See* ECF No. 17.  The only tie to Hawai'i is the fact that Plaintiff is a resident of Hawai'i.  *See* ECF No. 1 ¶ 3. There are no allegations that any of the events that gave rise to the dispute occurred physically in Hawai'i.  *See generally id.*  The court in *Abat* determined that:  (1) "[t]he place of performance of the contract, which is the repayment of the credit card debt" and (2) "[t]he subject matter of the contract, [p]laintiff's account" are

16

both in the state where the bank is located. *See* 738 F.Supp.2d at 1096. The same can be said for the dispute between Citibank and Plaintiff here. Both the place of performance and the subject matter of the credit card contract—the predicate relationship leading up to the Arbitration Agreement dispute—are in South Dakota, where Citibank is located.

Applying the flexible approach described in *Mikelson* then, the Court determines that South Dakota has a stronger interest than Hawaiʻi in seeing its laws applied to the Arbitration Agreement dispute at issue and joins other courts in concluding that South Dakota law should govern the analysis. *See* 107 Hawaiʻi at 198, 111 P.3d at 607; *Hartranft v. Encore Capital Group, Inc.*, 543 F.Supp.3d 893, 914 (S.D. Cal. 2021) ("[O]ther courts ruling on motions to compel arbitration of the very same Citibank Card Agreement have also held South Dakota law applies to the determination of the validity of the Arbitration Provision."). The Court turns next to whether a valid Arbitration Agreement was formed.

## C.    Validity of the Arbitration Agreement

The parties' dispute over the existence of the arbitration agreement boils down to this—Citibank alleges that it mailed Plaintiff the Card Agreement containing the Arbitration Agreement, *see* ECF No. 14 at 3, while Plaintiff asserts that she never received it in the envelope containing her physical card, *see* ECF No. 17 at 2; ECF No. 17-1 ¶¶ 4–5.

### 1.     Plaintiff's Denial of Receipt is Insufficient to Rebut Citibank's Mailing

Plaintiff alleges that she never received the Card Agreement and Arbitration Agreement in the mail.  *See* ECF No. 17 at 2, 8–9; ECF No. 17-1 ¶¶ 4–5.  More specifically, Plaintiff refutes receipt of the Card Agreement by alleging that the credit card "was attached only to a single page.  There was nothing else in the envelope."  *See* ECF No. 17-1 ¶ 5.  However, Citibank proffers specific evidence demonstrating that it mailed the Card Agreement to Plaintiff and that Plaintiff is bound by the Arbitration Agreement, such as:

(1)   it is Citibank's regular practice to include a copy of the Card Agreement with the physical credit card when it is mailed to a customer, *see* ECF No. 14 at 14 ¶ 7;

(2)   the system notes reflect that the Card Agreement was mailed with the physical AA credit card to Plaintiff on June 16, 2024, *see* ECF No. 18-1 ¶ 11;

(3)   there is no record that the postal service returned the mail as undeliverable, *see* ECF No. 14 at 14 ¶ 8;

(4)   Plaintiff verified receipt of the AA credit card delivered in the June 16, 2024 mailing, *see* ECF No. 18-1 ¶ 13;

(5)   Plaintiff thereafter used the AA Account, *see* ECF No. 14 at 15 ¶ 10; and

(6)   Plaintiff had the right to reject the Arbitration Agreement within 45 days of opening the account but Citibank's records do not reflect that Plaintiff did so, ECF No. 18-1 ¶ 18.

"To resolve the stark discrepancy between . . . the parties' assertions, the Court relies on the mailbox rule." *Izett*, 2019 WL 4845575, at *5 (analyzing similar dispute over receipt of Card Agreement between Citibank and party opposing arbitration). "The mailbox rule provides that the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee . . . . [I]t is a tool for determining, in the face of inconclusive evidence, whether or not receipt has actually been accomplished." *Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 962 (9th Cir. 2001). The Ninth Circuit has explained that "a sworn statement is credible evidence of mailing for purposes of the mailbox rule" and "the presumption of receipt established by the mailbox rule applied precisely to avoid the type of swearing contest" like the situation here. *See id.* at 963 (citation and internal quotation marks omitted). Other courts in this circuit resolving similar disputes have applied this rule and concluded that "rebuttal evidence must rise beyond the level of a mere denial of receipt." *See Izett*, 2019 WL 4845575, at *5.

Here, Plaintiff not only offers a mere denial, but also concedes that she received the physical credit card from Citibank, which according to Citibank was included in the same mailing as the Card Agreement. *See* ECF No. 17-1 ¶ 5; ECF No. 18-1 ¶ 11. Plaintiff admits that she regularly received mail from Citibank pertaining to her account. *See, e.g.*, ECF No. 17-1 ¶¶ 12, 16, 20, 24, 26, 28–29.

19

In *Izett*, the court determined that the plaintiff "failed to rebut the presumption that Citibank mailed him the Card Agreements" when he submitted a declaration asserting that he never received the Card Agreement but did not deny that Citibank had his correct address or that he received other mail from Citibank at that address.  *See* 2019 WL 4845575 at *6.  In *Hartranft*, the court considered a similar declaration from a Citibank employee "as credible evidence that Citibank mailed the notice and agreement to [p]laintiff, and that he received them."  *See* 543 F.Supp.3d at 903 n.3.  The *Hartranft* court further concluded that the plaintiff "failed to rebut the presumption that Citibank mailed him the Card Agreements" where Plaintiff did not deny "living at the address to which the Card Agreement was sent" or "receiving other mail from Citibank" there.  *See id.*

Plaintiff relies on *Martin v. Wells Fargo Bank*, 2013 WL 6236762 (N.D. Cal. Dec. 2, 2013) to argue that Citibank's evidence is not sufficient.  However, in *Martin* the declaration did not provide evidence that the notice of the arbitration agreement "was actually mailed to" the plaintiff, only that he "'was targeted to receive' the" notice.  *Id.* at *3.  In contrast, Citibank provided that specific evidence here.  Plaintiff's citation to *Acher v. Fujitsu Network Commc'ns, Inc.*, 354 F.Supp.2d 26, 37 (D. Mass. 2005) is also unavailing because the party seeking arbitration there did not proffer "any evidence which would establish that [the parties allegedly subject to arbitration] were notified" of the policy.

20

Because Plaintiff offered only a mere denial of receipt and admitted that she regularly received mail from Citibank, the Court determines that Plaintiff failed to rebut the presumption that Citibank mailed her the Card Agreement.[3]  The Court turns next to whether Plaintiff and Citibank entered into a valid contract for arbitration.

### 2. Plaintiff's Use of the Credit Card Created a Binding Contract Under South Dakota Law

South Dakota courts "apply South Dakota contract law" when determining "whether a party is bound by an arbitration agreement."  *Masteller v. Champion Home Builders, Co.*, 723 N.W.2d 561, 564 (S.D. 2006).  "In South Dakota, the 'elements essential to the existence of a contract are:  (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration.'"  *Schwalm v. TCF Nat'l Bank*, 226 F.Supp.3d 937, 940 (D.S.D. 2016) (quoting S.D. Codified Laws ("SDCL") § 53-1-2).  "The question of mutual consent is determined by considering the parties' actions, as well as their words."  *Dakota Foundry, Inc. v. Tromley Indus. Holdings, Inc.*, 891 F.Supp.2d 1088, 1096 (D.S.D. 2012).

---

[3] As an aside, the Court agrees with the reasoning in *Samenow v. Citicorp Credit Servs., Inc.*, 253 F.Supp.3d 197, 204 (D.D.C. 2017), which analyzed a similar arbitration dispute and explained that "[n]on-receipt of the Card Agreements . . . [is] a dubious position for Plaintiff to take, as it would mean non-assent to the entirety of the agreements, which would seemingly forestall this action, as it seeks damages predicated on the existence of those agreements."

South Dakota law also specifically addresses when a contract is formed between a credit card company and its customer:

> The use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer with reference to any accepted credit card, and any charges made with the authorization of the primary card holder.

*See* SDCL § 54-11-9.

Here, Plaintiff contends that "[t]he only agreement between Plaintiff and Citi for the American Airlines credit card was the online application and subsequent online approval by Citi." *See* ECF No. 17 at 8. She alleges that "[w]hen the online application was approved by Citi, the credit card agreement was formed. That agreement did not include an arbitration agreement, nor any reference to arbitration." *See id.*

Plaintiff offers only conclusory assertions that there was no arbitration agreement nor any reference to arbitration. She does not provide a copy of "the credit card agreement" that she alleges was formed online instead of the one Citibank describes. *See* ECF No. 1; ECF No. 17. Plaintiff essentially contends that she is bound by an unknown agreement for which she provides no details, but she is sure that it didn't include an Arbitration Agreement.

22

Meanwhile, Citibank includes an exemplar of the AA Account application

Plaintiff submitted online, which states:

> By submitting this application, you request that Citi establish a [Citi® / AAdvantage® Platinum Select® World Elite Mastercard] account (the "Card Account") to you and any Authorized Users you have designated. The Card Account will be governed by the terms of the card agreement ("Card Agreement") provided when the Card Account is issued.

*See* ECF No. 18 at 15; ECF No. 18-2 at 4.

As stated above, under South Dakota law, Plaintiff's act of using the credit

card bound Plaintiff her to the terms of the Card Agreement, because a valid

contract was formed between Citibank and Plaintiff.  *See* SDCL § 54-11-9.  Other

courts evaluating similar disputes with Citibank under South Dakota contract law

have concluded the same—that using the Citibank credit card constitutes consent

to the Card Agreement, including its Arbitration Agreement.  *See, e.g.*, *Ball v.*

*Citibank, N.A.*, 733 F.Supp.3d 972, 978 (D. Nev. 2024) ("[J]ust using a credit card

amounts to acceptance of that card's contract in South Dakota."); *McCormick v.*

*Citibank, NA*, 2016 WL 107911, at *4 (W.D.N.Y. Jan. 8, 2016) ("[U]se of a credit

card constitutes sufficient evidence of the card user's consent to the terms of the

agreement governing the account."); *Fedotov v. Peter T. Roach and Assocs., P.C.*,

2006 WL 692002, at *2 (S.D.N.Y. Mar. 16, 2006) (cardholder's use of Citibank

credit card after mailing of Card Agreement binds him to arbitration clause);

*Ranginwala v. Citibank, N.A.*, 2020 WL 6817508, at *4 (D.N.J. Nov. 19, 2020) (same); *Doe*, 2024 WL 5275508, at *3 (same).

Courts have determined this to be true even in cases where, as here, the party opposing arbitration claimed they didn't receive the Card Agreement. *See, e.g.*, *McCormick*, 2016 WL 17911, at *4 (compelling arbitration where plaintiff denied receipt of Citibank Card Agreement but used the credit card); *Doe*, 2024 WL 5275508, at *3–4 (same). In *Bakon v. Rushmore Serv. Ctr., LLC*, the court noted that "actual receipt of an arbitration agreement need not be proven to enforce it" and concluded that regular use of a credit card under South Dakota law constitutes sufficient evidence of consent. *See* 2017 WL 2414639, at *2 (E.D.N.Y. June 2, 2017). The bank in *Bakon* offered uncontested evidence that the plaintiff used the credit card and it was the bank's custom to mail the arbitration agreement with each new credit card—the *Bakon* court thus determined that this constituted sufficient unrebutted evidence to establish the bank "a presumption that [the plaintiff] received the Agreement and agreed to its terms." *See id.*

Therefore, because Plaintiff concedes that she used the AA credit card and Citibank established sufficient unrebutted evidence that it mailed the Card Agreement to her, Plaintiff is bound to the terms of the Card Agreement under

South Dakota law.[4]  Because the Court concludes that the first step of whether

there is a valid arbitration agreement has been met, it turns next to the second

step—whether the arbitration covers the dispute.  *See Zoller*, 993 F.3d at 1201.

## D.    Enforceability of the Arbitration Agreement

### 1.    The Arbitration Agreement Covers the Dispute

Citibank's Arbitration Agreement encompasses "any claim, dispute or

controversy" between Plaintiff and Citibank "arising out of or related to"

Plaintiff's account or a previous related account.  *See* ECF No. 14 at 4.  Because

Plaintiff's underlying action is related to a dispute about the charges on her AA

Account, Citibank's Arbitration Agreement clearly covers the dispute.

Plaintiff does not contest the issue, so the Court deems it conceded.  *See,*

*e.g.*, *John-Charles v. California*, 646 F.3d 1243, 1247 n.4 (9th Cir. 2011) (finding

---

[4]  The caselaw that Plaintiff offers to argue she did not assent to the Card
Agreement is inapposite.  *Knutson v. Sirius XM Radio Inc.* analyzed an arbitration
dispute between a customer who bought a car and the satellite radio service that
was pre-installed in the vehicle and offered a trial subscription.  771 F.3d 559, 566
(9th Cir. 2014).  *Norcia v. Samsung Telecomm. Am., LLC* determined that no
"reasonable person" in the plaintiff's position would be on notice of Samsung's
arbitration agreement because it was inside a warranty brochure placed in a phone
box.  845 F.3d 1279, 1289 (9th Cir. 2017).  Neither case is applicable to the
situation here where Plaintiff directly applied for a credit card online and
Citibank's online application specified that the card would be governed by the
terms of the Card Agreement.  *See* ECF No. 18 at 15; ECF No. 18-2 at 4.
Furthermore, both cases apply California state law, which does not apply here and
contradicts Plaintiff's contention that Hawai'i law governs the dispute.

issue waived where party "failed to develop any argument"). The Court's conclusion also aligns with the "liberal federal policy favoring arbitration agreements" and the Supreme Court's guidance that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *See Moses H. Cone*, 460 U.S. at 24–25.

## 2. The Arbitration Agreement is Not Unconscionable

Instead of arguing that the Arbitration Agreement does not cover the dispute, Plaintiff relies on Hawaiʻi law to contend that the Card Agreement is unconscionable and void under HRS §§ 480-2 & 480-12 for unfair and deceptive business practices. *See* ECF No. 17 at 9–10. Citibank asserts that Plaintiff fails to meet her burden of showing that the Arbitration Agreement was unconscionable and thus unenforceable. *See* ECF No. 18 at 19.

The Court agrees that Plaintiff fails to show that the Arbitration Agreement is unconscionable. First, Plaintiff relies on Hawaiʻi law, but this dispute is governed by South Dakota law because of the valid choice-of-law provision. *See*

*supra* Section III(B).[5]  Second, under South Dakota's test, the court focuses on both "overly harsh or one-sided terms, *i.e.*, substantive unconscionability; and how the contract was made (which includes whether there was a meaningful choice), *i.e.*, procedural unconscionability."  *Nygaard v. Sioux Valley Hosps. & Health Sys.*, 731 N.W.2d 184, 195 (S.D. 2007) (citation and internal quotation marks omitted).  Plaintiff offers only conclusory arguments that the agreement is unfair, deceptive, and misleading.  *See* ECF No. 17 at 9–11.  She alleges that the Card Agreement "fundamentally changed the initial terms of the online agreement."  *See id.* at 10.

Once again, the Court notes that Plaintiff does not provide a copy or details of "the credit card agreement" that she alleges was formed, *see* ECF No. 1; ECF No. 17, while Citibank shows that the online application explicitly states that the AA Account would be governed by the terms of the Card Agreement, *see* ECF No. 18 at 15; ECF No. 18-2 at 4.  And again, Plaintiff cites no applicable caselaw to support the proposition that a credit card contract's arbitration agreement with an

---

[5]  The Arbitration Agreement contains a South Dakota choice-of-law clause.  *See* ECF No. 14 at 8.  The Court upholds the South Dakota choice-of-law for the same reasons described in the previous choice-of-law discussion.  *See supra* Section III(B); *see Snyder*, 2016 WL 6662675, at *6 (explaining that Hawaiʻi follows the Restatement (Second) of Conflict of Laws in evaluating a choice-of-law clause); Restatement (Second) of Conflict of Laws § 187 (1971) (describing how a choice-of-law clause would only be rejected if "the chosen state has no substantial relationship to the parties or the transaction" or applying that law "would be contrary to a fundamental policy of a state which has a materially greater interest").

opt-out provision like the one here is unconscionable. *See* ECF No. 17 at 9–11.

Because of the "liberal federal policy favoring arbitration agreement, . . . the party

resisting arbitration bears the burden of proving that the claims at issue are

unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79,

91 (2000) (citations and internal quotation marks omitted).  Plaintiff has failed to

meet that burden here.

Meanwhile, numerous other courts have rejected similar contentions of

unconscionability and upheld Citibank's Arbitration Agreement. *See, e.g.*,

*Hartranft*, 543 F.Supp.3d at 918 ("[T]he very same Arbitration Provision in the

Citibank Card Agreement has been upheld by many courts in the face of similar

arguments of unconscionability.") (collecting cases); *Ranginwala*, 2020 WL

6817508, at *6 (finding Citibank's arbitration provision not unconscionable under

South Dakota law and compelling arbitration); *Coppock*, 2013 WL 1192632, at

*8–9 (same).  The court in *Garcia v. Citibank, N.A.* rebuffed an unconscionability

argument where "Plaintiff had a meaningful choice to reject" the arbitration

provision but continued to use his credit cards. *See* 2019 WL 2902499, at *4 (Feb.

13, 2019).  And specifically, one court declined to consider the plaintiff's

California state law claims of unconscionability because South Dakota law

governed the agreement. *See Ackerberg v. Citicorp USA, Inc.*, 898 F.Supp.2d

1172, 1176–77 (N.D. Cal. 2012).  Because Plaintiff chose to activate her AA credit

card and form a contract with Citibank, and that contract is governed by South Dakota law, the Court rejects her argument that the Arbitration Agreement should be voided for unconscionability under HRS §§ 480-2 & 480-12.

Plaintiff is therefore bound by the terms of the Card Agreement, which contains an enforceable Arbitration Agreement.  As the Court determines that both factors for granting a motion to compel arbitration are met, and the FAA "requires the court to enforce the arbitration agreement in accordance with its terms," *see Chiron Corp.*, 207 F.3d at 1130, the Court GRANTS Defendant's Motion.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion to Compel Arbitration.  This case is STAYED pending completion of the arbitration.

IT IS SO ORDERED.

Dated:  Honolulu, Hawai'i, June 5, 2025.



Jill A. Otake
United States District Judge

---

CIV. NO. 25-00034 JAO-RT, *Du-Phillips v. Citibank, N.A.*; Order Granting Defendant Citibank N.A.'s Motion to Compel Arbitration and Stay Action (ECF No. 14)